Rannet, J.
The material averments of the plaintiff’s petition are not controverted by the defendant’s answer. This answer contains two statements of defense. Upon the first,, nc proof was given at the trial, and it may, therefore, be laid out of the case; but the second was fully proved. The question, therefore, really is, whether this last ground of defense constituted any defense to the action.
From the petition it appears that the plaintiff and his intestate were husband and wife, and were married in the State of Pennsylvania, in March, 1849, where, in October of that year,, she died intestate, and without issue; and that at the time of the marriage and of her death, and for several years prior' thereto, they were residents of Fayette county, in that state. That in January, 1850, the plaintiff was duly appointed andi qualified as her administrator, by the proper authority in that county; and by the laws of that state, is entitled to all her' personal property subject to distribution, after the payment of debts. That at the time of her death, she owed no debts in this state, but was the owner of a deposit in a bank in Jefferson county, where, in November, 1849, the defendant was-appointed and qualified as her administrator, collected this deposit, and, after paying the costs of administration, subsequently distributed the residue among the .brothers and sisters; of the intestate, according to the laws of this state.
*428 From the answer it appears, that the defendant filed hia final account of this distribution, in the probate court of Jefferson county, on tbe 12th of January, 1856, when, upon due notice, it was examined, approved, and ordered to be.recorded.
It is beyond all question, that tbis'distribution should have been made in accordance with tbe laws of the domicil of tbe intestate, and, consequently, that tbe money bélonged to tbe husband, and not to her brothers and sisters.
Personal property has no fixed situs, adheres, in contemplation of law, to tbe person of tbe owner, and is disposed of, in almost every respect, whether of transfers inter vivos, testamentary dispositions, or successions, by tbe law of bis domicil. Tbe principle is founded in an enlarged policy, growing •out of tbe transitory nature of personal property, and tbe .general convenience of nations. As remarked by Judge Story (Confl. of Laws, sec. 379): “ If tbe law rei sitce were generally to prevail in regard to movables, it would be utterly impossible for tbe owner, in many cases, to know in what manner to dispose of them during bis life, or to distribute them at bis death; not only from tbe uncertainty of their situation in tbe transit to and from different places, but from tbe impracticability of knowing, with minute accuracy, tbe law of transfers inter vivos, of testamentary dispositions and successions in tbe different countries in which they might happen to be.” And after enumerating many other “ serious evils,” detrimental to “ tbe interests of all civilized nations,” which tbe application •of tbis principle would involve, be very justly concludes that, “ in maritime nations, depending upon commerce for their revenues, their power and their glory, tbe mischief would be incalculable.”
Lord Loughborough, in Sill v. Worswick, 1 Henry Black. 690, states tbe general doctrine with great force and precisfon. ■“ It is a clear proposition,” be said, “ not only of tbe law of England, but of every country in tbe world, where law has tbe semblance of science, that personal property has no .locality. Tbe meaning of that is, not that personal property has no visible locality, but that it is subject to that law which *429 governs the person of the owner; both with respect to the disposition of it, and with respect to the transmission of it, either by succession, or by the act of the party. It follows the law of the person. The owner in any country may dispose of his personal property. • If he dies, it is not the law of the country in which the property is, but the law of the country of which he was a subject, that will regulate the succession.” _
Indeed, so universally has it been treated as a part of thejus gentium, and thus incorporated into the municipal law of every country, that C. J. Abbott declared it “ not correct to say, that the law of England gives way to the law of the foreign country; but, that it is part of the law of England, that personal property should be distributed according to the jus domicilii.”
The doctrine has been universally acted upon in this country ; and it will be readily seen, that it could nowhere be applied with greater benefit, or less iñconvenience, than between the states of the American Union.
But while this is the general rule, and has its just application to all cases of succession or distribution, a limitation, as-well settled as the rule itself, makes an exception in respect to debts; and no state is under obligation to permit the personal estate of a deceased debtor to be withdrawn until the claims of his creditors, resident in the state where the property is found, have been first satisfied. To act upon any other principle would be to yield to comity what is due to justice; and-to make the state inflict an injury upon its own citizens, by compelling them to seek the aid of foreign jurisdictions to enforce their just demands.
Erom this limitation, and to give it effect, results the established doctrine, that a grant of administration in the state where the deceased resided, does not, as a matter of right, extend beyond the territorial limits of such state, nor confer title to movable property situated in other states; nor can an administrator so appointed sue or be sued, or collect the assets of the decedent, except in the state from which he derives his authority to act. Story’s Confl. of Laws, secs. 512,. *430 513, and authorities cited. Whatever relaxation of this doctrine obtains, arises ex comitate, and, of course, is subject to be controlled or modified as each state may think proper, with .reference to its own institutions, and its own policy, and the rights and interests of its own citizens.
The restriction which this doctrine imposes upon the powers and capacities of the administrator appointed in the decedent’s domicil, induces the necessity of appointing others in states where personal property is found, or debts are to be collected. -Such new administrations are treated as merely ancillary or auxiliary to the original foreign administration, and subordinate to it, so far as regards the collection of the effects, and the proper distribution of them; and, as it seems to me, upon principle, should be limited to the necessity out of which they arise, and confined to the collection of the assets, and the payment of debts due to the citizens of the state, leaving any balance that may remain to be remitted to the state of the decedent’s domicil, and there disposed of in accordance with the laws of such state. Any other course will often be attended with serious embarrassments. The intimate and important commercial relations existing between the east and the west, make it a case of very frequent occurrence, that personal property, at the death of the owner, is left in a half dozen states. If heirs and legatees are obliged to resort to the judi- , cial tribunals of these states, to enforce their rights of distribution of the fragments which each may control, it imposes a .serious hardship upon them; while, in all such cases, it compels these tribunals to administer foreign laws, and, in cases -of doubt and difficulty, uniformity of decision is hardly to be expected.
But, however this may be, the weight of judicial opinion would, undoubtedly, assign to these administrations somewhat larger functions, and hold them subservient to the rights of legatees and distributees, who are resident within the country where they are granted; but with this important qualification— that in cases of doubt, or conflicting equities, it is a matter of legal discretion, to be exercised upon all the circumstances of t-each particular case, whether the courts will order distribu *431 tion, or cause the fund, to be remitted to the state where the original administration was granted. Dawes v. Head, 3 Pick. R. 128; Harvey v. Richards, 1 Mason R. 381. Every change made by our legislation, in these important principles, has been designed to render them still more liberal toward other states. By the administration law, foreign executors and administrators may sue and be sued in this state, like those of our own appointment; thereby, in most cases, making it unnecessary that any ancillary administration should be instituted. Administration may, however, be granted, in all cases, where property is found here to be administered; but by the amendatory act of March 25, 1851 (1 S. & C. Stat. 616), when it is taken by a creditor, in the cases therein specified, it is expressly provided that, after paying the debts from the assets, “ the surplus, if any, shall be paid into the court granting such administration, for the benefit of the estate of such decedent, in the state where the decedent resided at the time of his death.” And although this case, and many others of ancillary administration, are not within the terms of that act, yet, nothing will be found in any of our laws, to deprive such an administrator of the right, of devolving upon a court of competent jurisdiction the responsibility of determining, whether distribution should be made, or the fund remitted; and, in either event, of protecting himself from further liability. But if, instead of seeking or obtaining such authority, he takes upon himself the responsibility of making distribution, there can be no hardship in requiring him to make it correctly, and in accordance with the foreign law, by which it must be governed.
But it is claimed that, whether the money was paid to those legally entitled or not, the payment has been approved by the probate court, and allowed as a final discharge of the administrator ; and that, while this order remains in force, it is a perfect bar to this action. The 176th section of the administration law (S. & C. Stat. 600) is relied upon to support this position. It is in these words:
“ When an executor or administrator has paid or delivered over to the persons entitled thereto, the money, or other prop *432 erty in his hands as required by the order of distribution or otherwise, he may perpetuate the evidence of such payment,, by presenting to the court, within one year after such order was made, an account of such payments, or the delivery over of such property; which,'being proved to the satisfaction of the court, and verified by the oath of the party, shall be allowed as his final discharge, and ordered by the court to be recorded; and such discharge shall forever exonerate the party, and his sureties from all liabilty under such order unless his account shall be impeached for fraud or manifest error.”
In point of fact, no order of distribution was made; but as-the only order the court had, at that time, power to make, would have been a general direction to distribute the funds-remaining in his hands according to law, this is not a material-circumstance. Did the subsequent approval of the payments actually made to those not entitled, bind those who were entitled to-the money? We are very clear that it did not. The money was-not ordered out of his hands, by a court of competent jurisdiction, having the parties in interest before it. He voluntarily paid it away, and now relies upon a subsequent approval of what he had done, to turn the wrong into a right. The object of this section, and the condition upon which his discharge is to rest, are plainly stated on its face. Everything is founded-upon the condition, that he “ has paid or delivered to the persons entitled thereto, the money or other property in his hands,”' and the object is to “perpetuate the evidence of suchfaymentf and it is then very appropriately declared, that this evidence, after being ordered to record, shall be deemed conclusive, and-operate his final discharge, unless impeached for fraud or manifest error. But conclusive of what ? Surely, of what it contains, and not of that to which no allusion is made. Applied to the ease, it is conclusive that payments were made to those who were not entitled to receive them, but contains no evidence whatever that anything has been paid to those entitled to the money.
But the question has been substantially decided in the case of Negley v. Gard, 20 Ohio Rep. 310, in the construction given- *433 to the 14th, 15th and 16th sections of the administration law of 1831. 3 Chase Stat. 1778. The language of the two statutes is not the same, but, upon this point, they require the same construction. It is as trqe of this statute as of that, that it is left optional with the administrator, whether he will file this account of distribution or not; and it is as true here as there, that the payments must be made to those entitled to be of any avail. Where the payments were rightfully made, and the evidences filed and recorded, that statute pronounced the discharge of the administrator as peremptorily as this; and, yet, upon the same objection being made in that case, as is now made in this, C. J. Hitchcock, in delivering the opinion of the court, says: “ The only effect of this action of the court, is to place upon record the receipts in the hands of the executor or administrator, and make them final as against those who have signed them, as to so much of the distributive share to which they are entitled. But although the receipts may cover the whole property, those who are entitled to a distributive share, and have not received it, are not precluded from enforcing their claim.”
The fact is, it was the sole purpose of either statute, to enable the administrator to perpetuate the evidence of his payments, and, unless objected to in a limited time, to make that evidence conclusive against those who had signed the receipts; but it was never intended, in this indirect and ex parte manner, to make the order of the court allowing this evidence to be recorded, any evidence against others, who might claim to-be entitled to the fund. Such a claim could only be barred, in a proceeding to which they were parties; and, at the time this order was made (1856), the opinion, has been expressed in McLaughlin v. McLaughlin, 4 Ohio St. Rep. 511, that the probate court was invested with no jurisdiction to entertain such a controversy.
The judgment must be reversed, and the cause remanded for further proceedings.
Peck, C.J., and Brinkerhoef, Scott and Wilder, JJ., concurred.